**D & K INTERNATIONAL, INC., Plaintiff,**

v.

**GENERAL BINDING CORPORATION, Defendant.**

**No. 97 C 4665.**

United States District Court, N.D. Illinois, Eastern Division.

July 13, 2000.

Robert Edward Wagner, Roger H. Stein, Richard C. Himelhoch, Michael Gary Kelber, Wallenstein & Wagner, Ltd., Chicago, IL, Marina N. Saito, Arnold, White & Durkee, Chicago, IL, Dennis S. Nudo, Nudo, Poteracki & Associates, Rosemont, IL, for D & K International, Inc.

Lewis T. Steadman, Robert Morton Ward, Lewis T. Steadman, Jr., Hill & Simpson, Chicago, IL, Brian William Bell, James Kendall Lewis, Swanson, Martin & Bell, Chicago, IL, for General Binding Corporation.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff D & K International, Inc. has sued defendant General Binding Corporation seeking a declaratory judgment of invalidity, non-infringement and unenforceability of U.S.Patent No. 5,626,969 (the "969 patent") owned by defendant. Defendant has counterclaimed against plaintiff for infringement of the 969 patent. Plaintiff has moved for summary judgment of invalidity, arguing that the alleged invention of the 969 patent was publically used and on sale more than one year prior

to February 2, 1992, the date defendant filed the patent application, and that it was known and used by others prior to the date of the invention by the applicant. For the reasons set forth below, the motion is denied.

### Background

The 969 patent relates to a method for manufacturing a nylon film suitable for use in thermal one-sided lamination which eliminates the inherent tendency to curl of perfect bound books, soft covered and other laminating films of polyester and polypropylene. The 969 patent was issued to Lewis Joson of defendant on May 6, 1997. On June 19, 1997, defendant accused plaintiff of inducing the infringement of the 969 patent by selling nylon film. On June 30, 1997, plaintiff filed the instant action seeking a declaration of invalidity and unenforceability of the 969 patent.

### Legal Standards

■ A patent is presumed valid, and a challenger bears the burden of proving invalidity by clear and convincing evidence. 35 U.S.C. § 282. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When faced with a motion for summary judgment, the nonmovant may not rest on his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The court addresses all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To defeat summary judgment, the nonmovant must present sufficient evidence that would allow a trier of fact to find in the nonmovant's favor. *Id.* at 249–50, 106 S.Ct. 2505.

### Discussion

In its motion, plaintiff argues that the 969 patent was in public use and on sale in violation of 35 U.S.C. § 102(b), which provides:

A person shall be entitled to a patent unless—

(b) The invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patents in the United States....

■ The original application for the 969 patent was filed February 21, 1992. Therefore, February 22, 1991, is the critical date for purposes of the public use and on-sale bars. *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). The "on-sale" bar applies when two conditions are satisfied before the critical date. "First, the product must be the subject of a commercial offer for sale." *Id.* at 67, 119 S.Ct. 304. "Second, the invention must be ready for patenting. That condition may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* at 67–68, 119 S.Ct. 304.

■ In the instant case, plaintiff's argument that the invention was placed "on sale" by defendant prior to the critical date is based predominantly on a November 2, 1990, internal memorandum from Chuck Thompson (defendant's Vice–President of Marketing) to Govi Reddy (defendant's President) regarding a meeting Thompson and Joson had with Jeff Hirsch of Whitehall, one of defendant's customers, regarding defendant's Lay Flat film (defendant's name for its invention). That memorandum provides:

... Jeff was extremely pleased and impressed with the lay flat film and our progress in our R & D efforts. He seems quite convinced and quite satis-

fied that the lay flat film does reduce curl or eliminate it, even in some situations when a sheet becomes filled with moisture and does curl initially, the film seems to cause a sheet to flatten out very quickly. We brought back some sample sheets and books made with lay flat film for evaluation.

When I gave the price of $.25/MSI to Jeff for the 8500LF, he seemed taken back. In a nut shell, Jeff feels that in most cases the book manufacturers will not want to pay more for the product and it would be up to him to determine if he wanted to pay more in order to assure or eliminate his eating jobs in the future from his customers due to curl. This is a practice he does. When a customer is not happy with a product he takes it back. I asked Jeff where the threshold of pain might be. Obviously he would be very ecstatic to purchase the material at his current price. He indicated that if it was $.13 or .14/MSI he would probably do that. Getting up into the $.16 or $.17 range becomes his threshold of pain.

Plaintiff argues that this memorandum conclusively demonstrates that Thompson offered to sell the Lay Flat film to Whitehall at $.25/MSI. The court disagrees. Although the memorandum is obviously subject to that interpretation, it is not, by itself conclusive. Indeed, as defendant argues, a more reasonable interpretation is that Thompson simply broached the subject of pricing to Hirsch, with no intent by either side to enter into a commercial sales agreement. The memo lacks all terms of a commercial offer except for sales price. For example, there is no discussion of quantity, delivery date, or shipment or payment terms.

Nor does the memorandum demonstrate that the defendant was attempting to commercialize the invention. Although the memorandum summarizes some discussion about marketing, it also indicates that Thompson brought back sample sheets and books for further evaluation, indicating that the film was given to Whitehall as part of a testing process.

Perhaps recognizing that the November 2, 1990, memorandum alone is insufficient to establish invalidity, plaintiff also relies on a November 20, 1990, memorandum memorializing a new products meeting at which Thompson was directed "to try to sell the 8500 [Lay Flat] film to Whitehall at $0.18/MSI." Although this memorandum indicates that defendant was ready to sell the film, there is no evidence that Thompson ever followed up on the direction. Accordingly, because plaintiff has not demonstrated that the subject of the 969 patent was "on sale" prior to the critical date, its motion for summary judgment based on § 102(b)'s on sale bar is denied.

Plaintiff also argues that the invention was "in public use" prior to the critical date. The Federal Circuit has defined public use as including "any use of the invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Baxter International, Inc. v. COBE Labs., Inc.,* 88 F.3d 1054, 1058 (Fed.Cir. 1996). Evaluation of a claim of public use requires analysis of "how the totality of the circumstances of the case comports with the policies underlying the public use bar." *Tone Bros. v. Sysco Corp.,* 28 F.3d 1192, 1198 (Fed.Cir.1994). Those policies include:

1. discouraging the removal, from the public domain, of inventions that the public reasonably has come to believe are freely available;

2. favoring the prompt and wide spread disclosure of inventions;

3. allowing the inventor a reasonable amount of time following sales activity to determine the potential economic value of a patent; and

4. prohibiting the inventor from commercially exploiting the invention for a period greater than the statutorily prescribed time.

*Id.* The patentee may negate a showing of public use by coming forward with evidence that its use of the invention was experimental. *See TP Lab. v. Professional*

*Positioners, Inc.,* 724 F.2d 965, 971 (Fed. Cir.1984).

■ Plaintiff's claim of public use again is based primarily on Thompson's November 2, 1990, memorandum. Plaintiff argues that the memorandum demonstrates Whitehall's use of the nylon film to laminate soft covered books. The memorandum also indicates, however, that the use was for sample sheets and books, which were then returned to defendant for analysis. There is no evidence that Whitehall, or anyone else, used the product for commercial purposes. Although plaintiff is correct that defendant has not provided evidence that Whitehall's use was restricted in any way, plaintiff has not provided evidence that Whitehall actually used the film for any purpose other than experimentally at defendant's request. Therefore, a question of fact remains as to whether Whitehall "used" the film for other than experimental purposes, precluding summary judgment on this issue.

Finally, plaintiff argues that the 969 patent is invalid under § 102(a) because the invention was known and publicly used by plaintiff and others prior to the invention by the applicant. Plaintiff argues that prior to 1990 (defendant claims the invention date is November 1990) plaintiff offered and sold nylon film to Viking Press for use in laminating book covers. As support for this argument, plaintiff has submitted product lists from 1986 indicating that some sort of nylon film was available, although it is unclear if it was the same film as plaintiff's invention. Plaintiff has also presented evidence that it sold nylon film to Viking Press prior to plaintiff's invention date, but there is conflicting evidence as to how and when Viking used the film. In particular, as defendant points out, there are numerous inconsistences between the affidavits and deposition testimony of Timothy J. Leonhardt and Alice Esse of Viking as to when and what purpose Viking purchase the film. Although both Leonhardt and Esse testified that they were aware that nylon film was available to prevent curling prior to 1990, there is little evidence, apart from their own testimony, to establish that Viking or any one else ever used the film for that purpose. Neither Leonhardt nor Esse could provide any documentary evidence to support their statements, nor has plaintiff provided any books produced prior to the critical date that were laminated with nylon film. Accordingly, plaintiff's has not demonstrated by clear and convincing evidence that the invention was known and or publicly used prior to November 1990. Accordingly, the motion for summary judgment is denied.

### Conclusion

For the reasons set for above plaintiff's motion for summary judgment is denied. This matter is set for a report on status July 27, 2000, at 9:00 a.m.